Filed 11/4/20  P. v. Buckner CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E073208 |
| v. | (Super.Ct.No. FWV19000196) |
| TONY JOE BUCKNER, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Michael A. Camber, Judge.  Affirmed.

Kristen Owen, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, A. Natasha Cortina, Christine Levingston Bergman, and Lynne G. McGinnis, Deputy Attorneys General, for Plaintiff and Respondent.

A jury found defendant and appellant Tony Joe Buckner guilty of six counts of being a felon in possession of a firearm (Pen. Code, § 29800, subd. (a)(1))[1] and one count of being a felon in possession of ammunition (§ 30305, subd. (a)(1)). The trial court sentenced defendant to prison for a term of four years.

Defendant raises five issues on appeal. First, defendant contends the trial court erred under Evidence Code section 352 by excluding evidence of third-party culpability. Second, defendant contends the exclusion of third-party culpability evidence violated his constitutional rights. Third, defendant contends the trial court misstated the law in the jury instruction for firearm possession (CALCRIM No. 2510). Fourth, defendant contends the trial court erred by not giving the jury a unanimity instruction. Alternatively, defendant asserts that if his trial counsel forfeited the instructional errors for appellate review, then defendant was denied effective assistance of counsel. Fifth, defendant contends the cumulative effect of the trial court's errors was a denial of due process. We affirm the judgment.

**FACTUAL AND PROCEDURAL HISTORY**

A.     THE PEOPLE'S CASE

In 1994, in Los Angeles County, defendant pled guilty to a felony charge of possessing cocaine. (Health & Saf. Code, § 11350.)

On January 9, 2019, City of Pomona police officers had a search warrant for an apartment in Upland. Prior to entering the apartment, the police officers surveilled the

---

[1] All subsequent statutory references will be to the Penal Code unless otherwise indicated.

2

apartment for "two and a half to three hours." Police officers observed defendant arrive at the apartment's parking lot in an SUV. The officers decided to detain defendant and the three passengers in the SUV.

Upland police officers and Pomona police officers then went to the apartment "in an attempt to begin to clear[] the location to execute the search warrant." Defendant's son (Son), who was 26 years old at the time, stepped outside the apartment, but then reentered the apartment and barricaded himself inside. Son "wasn't communicating a whole lot" with the officers. City of Pomona Police Officer Frank Sacca brought defendant to the front of the apartment to speak with Son. Defendant said to Son, " 'Get out here,' or 'Come out here,' or something along those lines. The son kind of looked at him and kind of nodded in affirmation to him [through a window] and [defendant] told [Son], 'And lock my door,' something along those lines to lock my door." Son exited the apartment after being barricaded inside for approximately 15 minutes.

After police entered the apartment, they discovered the door to the master bedroom was locked. Police took the keys that were in the ignition of the SUV that defendant had been driving. A key on that key ring unlocked the master bedroom door. Police entered the master bedroom.

Inside the room, there were "numerous medication bottles that bear the name of [defendant]." Also inside the room, police found "more than ten" pieces of mail addressed to defendant's name with the apartment's address.[2] The mail was

_____

[2] Son has the same first and last name as defendant. The mail did not designate "Sr." or "Jr."

"throughout the room," such as on the dresser, on the nightstand, in the nightstand, and in the closet. The only clothing in the closet was male clothing. Some of the clothes appeared older and dusty. The clothes in the closet were "larger in size." Defendant is "medium height and heavier build." Son is "[t]all and thin." The clothing in the closet was consistent with defendant's size. The clothing appeared to be too large for Son. Police did not find any of Son's property inside the apartment.

Also inside the master bedroom, police found (1) a loaded .45-caliber semi-automatic pistol on the bed underneath two pillows; (2) a loaded .32-caliber revolver in a nightstand drawer next to the bed; (3) a short barreled AR-15 rifle in the closet; (4) a second short-barreled AR-15 rifle, which is a "5.56, .223 rifle," in the closet; and (5) a 12-gauge Winchester shotgun with rounds "in the magazine tube" inside the closet. Police also found (A) a "high capacity 30 round" AR-15 magazine; (B) a box of .223 Remington ammunition; and (C) "[a]nother box of .223 and 5.56 ammunition." The two boxes of ammunition were found on the top shelf in the closet. The magazine was found in the rifle bag with the AR-15 rifles. The closet was "stacked and very organized" with clothes and "numerous boxes." It took the officers approximately 15 minutes to discover the AR-15s and 20 to 25 minutes to discover the Winchester. Police also searched defendant's SUV. Inside the center console of the SUV, underneath the cupholder, the police found a loaded .380 semiautomatic pistol.

The police did not dust for fingerprints on the firearms or boxes of ammunition. The firearms had serial numbers but Officer Sacca could not recall to whom the

4

firearms were registered. Police took DNA swabs of the firearms but did not send the swabs to a lab for testing.

B. DEFENDANT'S CASE

Cheresha Martin (Conservator) lived with defendant from 2003 to 2008; they had a romantic relationship. She was defendant's conservator. She was not Son's biological mother. Conservator received and controlled defendant's social security funds and gave defendant his medications. The apartment where the search warrant was executed was Conservator's apartment. Conservator lived at the apartment with her four children; Son did not reside at the apartment.

The master bedroom in the apartment was Conservator's bedroom. There were dozens of defendant's medication bottles in the bedroom. One medication needed to be taken "one time a day. [A second] one twice a day. [A third] one three times a day." Conservator gave defendant his pills in "weekly pill packs." Defendant lives 20 to 30 minutes away from Conservator; she sees defendant twice a week.

Defendant does not sleep in the master bedroom. When asked at trial, "When was the last time that [defendant] resided even for a short period of time in that apartment?" Conservator replied, "Maybe last week." Conservator later clarified that she meant "maybe a year ago." When defendant sleeps at the apartment, he sleeps on a couch in the living room. The men's clothing in the master bedroom closet belongs to Conservator's sons. Conservator does not allow defendant to store firearms at her apartment. Conservator has never seen defendant with a firearm. Conservator has no knowledge of defendant owning a firearm. Conservator also drives the SUV that

5

defendant was driving. Conservator keeps the key to her bedroom door on the keyring with the SUV key.

## DISCUSSION

### A.    EXCLUSION OF EVIDENCE

#### 1.    *PROCEDURAL HISTORY*

The People moved in limine to exclude evidence of a shooting in which Son was allegedly involved. The People explained that the search warrant executed at the apartment pertained "to a gang shooting that occurred on August 29, 2018, in which [Son] was involved. Officers suspected [Son] fired several rounds at rival gang members prior to being struck by gunfire in return. Officers recovered [Son's] firearm, a .40 Smith & Wesson H&K pistol, at the scene." The People contended, "Besides a cellphone recovered from [Son], no such evidence relating to the gang shooting was found in this case."

On May 30, 2019, the court and counsel had an off-the-record discussion, in chambers, regarding evidentiary issues related to third-party culpability. On June 3, the court and counsel addressed the matter on the record. Defense counsel said, "Your Honor, it's my intention, and this is based off the chambers conference that we had earlier, I don't anticipate attempting to introduce evidence that [Son] was involved in a shooting. I don't think I have the ability, even if I wanted to, foundation-wise to introduce that evidence. But also it would be a tactical decision. So I think that's something that myself and the District Attorney are in agreement.

"Where I think there's some disagreement is, one, the fact that [Son] . . . was the subject of an arrest warrant and also the subject of the search warrant of the house. I know we discussed the search warrant of the house back in chambers. But I do want to make it clear in the statement of probable cause for the warrant of the house [Son] is specifically mentioned." Defense counsel explained, "[T]he reason why this is important is because I want to get into and I want to enter into evidence the fact that this warrant was looking for somebody else. This warrant was looking for and was linked to an arrest warrant for [Son]. [¶] And as discussed in chambers, this goes into the third party culpability argument. It's extremely relevant because the person they were looking for barricaded himself in the house I think for about 15 minutes. So I think that is extremely relevant. I don't see how it overcomes the 352.

"Looking at it from a 352 analysis, I guess the prejudicial value to the People would be confusion to the jury. But I would argue to the contrary, I think it would be very confusing for a jury just to hear that there was a warrant for a house and they don't have any foundation or any kind of information leading up to what that warrant stemmed from. I think it's very important that they know that this warrant was relating to my client's son. My client's son was found there, and my client's son also had an arrest warrant, especially because obviously the defense's argument is going to be third party culpability that the guns were not my client's. They were someone else's.

"And the person they were looking for is found in the house. He was alone in the house for 15 minutes while he barricaded himself. So I don't see any prejudicial value. I think this is very relevant to the case. It wouldn't be an undue burden of time. It's not

7

like I'm calling witnesses to establish this. I intend on doing it through the DA's own witness. And to the contrary, I think it's important for the jury to know this. I think it would be confusing if they didn't understand the circumstances behind both of the warrants."

The trial court asked, "What are you asking to admit? The fact that [Son] was the subject of the warrant?" Defense counsel said, "Yes." The People said, "[A]s we had discussed in chambers, . . . I don't believe the fact . . . there was an arrest warrant for [Son], and certainly that [Son] was, quote, the subject of the warrant on the house here, should come in at all. I don't believe it is relevant. And especially under 352, I think it completely confuses the issues. [¶] In terms [of] why the officers were there, I think it is more than sufficient to be able to articulate to the jury the officers were there to execute a valid warrant. This is not a 1538 in terms of going into all of the details as to why they were there. And I think it's a potential for opening up a can of worms.

"I think [defense counsel] has numerous foundational issues when it comes to talking about [Son], the reasons why they were there, because, first of all, none of the officers that I intend on calling up here for this trial wrote the warrant for [Son's] arrest. They were simply there to execute the warrant for the house for the address itself. [¶] And that's why Officer Sacca is here because he did—he wrote the warrant for the house. But, again, the son doesn't live there."

The trial court said, "So I think that [defense counsel] is going to be able to go into the third party culpability evidence. And based on the offer of proofs that I've heard as to what's going to be printed [*sic*], the evidence is going to be that [Son] was at

8

the house and tried to keep the police from getting in. That evidence alone would suggest to me that since he's inside the house and the guns were inside the house, that doesn't preclude you from making that argument.

"The problem I have with going into the reason why the officers were there is that in essence you're going to have to—this is a fairly limited trial in terms of evidence. If we start to go into why they were there, that's going to make this two-day trial in [*sic*] like a two-week trial. So to me, that's what 352 was set up to exclude.

"So the court is going to make the following finding: The Court is going to exercise its discretion to exclude the basis for both the arrest and the search warrant because the probative value is substantially outweighed by the prejudicial nature. In this case, the prejudicial nature would be it has the distinct possibility of confusing the jury and/or potentially prejudicing the case against the prosecution because of the fact that they may be pointing the finger at [Son] because of the basis of the warrants. So I'm going to keep that out."

The court went on to explain, "Also, the other aspect of that is I don't know that you can get into it anyway because I don't know if you have the witnesses for it. In essence, you would have to try that case here. That's a case that we're not going to try. We're just going to try this case, that case meaning the shooting case. [¶] So the Court's ruling that you cannot get into the basis for why the officers were there, I don't think that precludes you from anything else."

The following exchange then occurred:

9

The Court: "The other issue that came up when we discussed it in chambers was whether or not you can bring in the evidence the fact [*sic*] that [Son] is a gang member. [¶] I think you said you weren't going to go there? Or you did want to go there; right?

"[Defense counsel]: I did want to go there, yes. And I'm going to ask that I be allowed to introduce that evidence. [¶] And I submit.

"The Court: How would you be presenting that evidence?

"[Defense counsel]: It would be solely through Officer Sacca. He wrote in his report that based off of his contacts that he has reason to believe that the person they were looking for, [Son], is a Ghost Town Crips.

"The Court: And I'm going to respectfully decline your request to go there as well. [¶] Evidence is excluded under Evidence Code 352. If it poses an intolerable risk to the proceedings or reliability of the outcome, that case is People v. Riggs, Cal.4th at 290. Evidence of gang involvement is highly inflammatory, People v. Jordan 2003 108 Cal.App.4th 349. Consequently, when the relevance of gang evidence is slight or tangential, is the type [*sic*] of evidence that can intolerably affect the fairness of the proceedings. [¶] In this case, I don't think its relevance is particularly high, and I think the prejudicial nature of that evidence is. So I'm going to keep that under 352 as well."

2.     *ANALYSIS*

a.     Evidence Code section 352

i.     *Contention*

Defendant contends the trial court erred in its application of Evidence Code section 352 by excluding evidence "(1) [of t]he reason for the search warrant; (2) [of

10

t]he reason for the arrest warrant; and (3) [of Son's] alleged gang membership[;] . . . (4) [that o]ne of the guns seized at the home was recently used in a crime whereby [Son] allegedly fired it at rival gang members; and (5) [that d]uring the records check affiliated with the warrant, [Son] was found to live at the home searched where the guns were found."

### ii. *Law and Standard of Review*

Evidence Code section 352 provides, "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

" 'An appellate court reviews a court's rulings regarding relevancy and admissibility under Evidence Code section 352 for abuse of discretion. [Citation.] We will not reverse a court's ruling on such matters unless it is shown " 'the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice.' " ' " (*People v. Jones* (2017) 3 Cal.5th 583, 609.)

### iii. *Reason for the Search Warrant*

We start with the exclusion of evidence concerning the reason for the search warrant.

Defendant was charged with being a felon in possession of a firearm (§ 29800, subd. (a)(1)) and ammunition (§ 30305, subd. (a)(1)). The elements of the firearm

11

offense "are conviction of a felony and ownership or knowing possession, custody, or control of a firearm." (*People v. Blakely* (2014) 225 Cal.App.4th 1042, 1052.)

"[P]ossession may be imputed when the [firearm] is found in a place which is immediately and exclusively accessible to the accused and subject to his dominion and control, or to the joint dominion and control of the accused and another." (*People v. Williams* (1971) 5 Cal.3d 211, 215.) A defendant does not avoid conviction if his dominion and control of the place where the firearm is located is shared with others. (*People v. Rushing* (1989) 209 Cal.App.3d 618, 622; *People v. Alderrou* (1987) 191 Cal.App.3d 1074, 1082.)

At the trial court, defendant explained, "[T]he reason why this is important is because I want to get into and I want to enter into evidence the fact that this warrant was looking for somebody else. This warrant was looking for and was linked to an arrest warrant for [Son]. [¶] And as discussed in chambers, this goes into the third party culpability argument. It's extremely relevant because the person they were looking for barricaded himself in the house I think for about 15 minutes."

The reason for the search warrant had little probative value because two people can possess the same firearm. Evidence that police wanted to search the apartment because they believed Son lived there and they believed Son had a firearm in the apartment does little to explain why defendant did not jointly possess the firearms with Son. In order for the evidence to be probative there would need to be something further showing that Son had exclusive possession over the firearms—that defendant could not have jointly possessed the firearms with Son. As it stands, evidence that police believed

12

Son resided in the apartment and possessed a firearm is not evidence that is probative of defendant's innocence—it is simply more information about a possible gun in the apartment.

Defendant asserts the evidence was probative because his "entire defense was that he did not live at the home, and that someone else, namely [Son], was the person who had the guns." The evidence pertaining to the reason for the warrant—that Son supposedly lived in the apartment and possessed a firearm—does nothing to prove that defendant did not live in the apartment. It also does nothing to prove that Son had exclusive possession of the firearms in the apartment. The evidence is probative of the fact that police believed (1) Son lived in the apartment, and (2) a gun was in the apartment. Neither of those things are particularly helpful in establishing that defendant lacked dominion and control over a firearm. The evidence merely shows that another person may have lived in the apartment and a firearm may have been in the apartment.

Defendant asserts, "[T]he evidence would only serve to clarify the reality of the situation for the jury, i.e., that the police were at the house for [Son] and believed at least initially that he lived there." Defendant does not explain how evidence of another person living in the apartment would have been probative of defendant's innocence. For example, defendant does not point this court to further evidence that would have demonstrated Son had exclusive possession of the firearms inside the apartment such that people inside the apartment could not have jointly possessed the firearms. As it stands, the search warrant evidence would have shown that Son may have lived in the

13

apartment and possessed a firearm. Without something more showing exclusive possession, that evidence lacks probative value.

On the prejudice side of the evaluation, defendant planned to introduce the evidence via Officer Sacca, who wrote the search warrant. Adding questions to Sacca's testimony concerning the reason for the search warrant likely would not have consumed a great deal of time. Sacca could have explained that officers were looking for Son and a firearm. There was no need to have a mini-trial regarding the alleged crime behind the search warrant. It is unlikely the jury would be confused by the evidence because the evidence would only add to the background information in that it would provide more context for law enforcement's presence at the apartment.

Although there is little prejudice to the evidence, there is also little probative value to the evidence. Given the lack of probative value, we conclude the trial court did not abuse its discretion in excluding the evidence.

#### iv. *Reason for the Arrest Warrant*

Defendant contends the trial court erred by excluding evidence of the reason for the arrest warrant. At the trial court, defendant said he planned to introduce the evidence "through the DA's own witness." The prosecutor responded, "I think [defendant] has numerous foundational issues . . . first of all, none of the officers that I intend on calling up here for this trial wrote the warrant for [Son's] arrest." Officer Sacca wrote the search warrant, but he did not write the arrest warrant.

Given this record, it appears defendant did not have evidence to offer on the topic of the arrest warrant. Nevertheless, assuming defendant could have obtained the

14

foundational evidence necessary for the arrest warrant, the same analysis as that pertaining to the search warrant would apply to the arrest warrant. Evidence that Son lived in the home lacks probative value because it does nothing to show that defendant was innocent of the charges of possessing firearms and ammunition. Therefore, if there were evidence to present, the trial court did not abuse its discretion by excluding such evidence.

v. <i>Records Check</i>

Next, defendant contends the trial court erred by excluding evidence, which would establish that "[d]uring the records check affiliated with the warrant, [Son] was found to live at the home searched where the guns were found." We see no difference between this issue and the first issue, i.e., excluding evidence of the reason for the search warrant. The reason police wanted to search the home was because they conducted a record search that caused them to believe Son lived in the home. Because we have already analyzed this issue *ante*, we do not repeat that analysis here.

vi. <i>Gang Membership</i>

Next, defendant contends the trial court erred by excluding evidence of Son's alleged gang membership. Defendant intended to have Officer Sacca testify that "[h]e wrote in his report that based off of his contacts that he has reason to believe that . . . [Son] is a Ghost Town Crips." Defendant did not explain what hearsay exception would apply to that evidence, nevertheless we will proceed on the assumption that a hearsay exception would have been applied to this evidence.

15

Son's gang membership has little probative value because it provides no insight into where defendant resided and whether defendant had some control over the firearms and ammunition in the apartment. On the prejudice side of the scale, it is unlikely the evidence would have consumed a great deal of time, because if it could have been introduced through Officer Sacca via a hearsay exception, then no extra witnesses would have been needed. As to undue prejudice, gang evidence "can be 'highly inflammatory' " (*People v. Simon* (2016) 1 Cal.5th 98, 125); however, in this case, the gang membership pertains to a person other than defendant.

One might fear that the prosecution would suffer some prejudice due to the gang evidence, in that the jury might assume Son was the primary owner of the guns due to his gang membership. However, as explained *ante*, even assuming Son was a gun-owning gang member who lived in the same apartment as defendant, none of that establishes that Son had exclusive control over the guns in the apartment. Therefore, that evidence is not probative of defendant's innocence because Son and defendant can jointly possess a firearm. Because the gang evidence had scant probative value, we conclude the trial court did not abuse its discretion by excluding the evidence.

vii.    *Seized Gun*

Next, defendant contends the trial court erred by excluding evidence establishing that "[o]ne of the guns seized at the home was recently used in a crime whereby [Son] allegedly fired it at rival gang members." In the trial court, defendant's attorney said, "I don't anticipate attempting to introduce evidence that [Son] was involved in a shooting. I don't think I have the ability, even if I wanted to, foundation-wise to introduce that

16

evidence. But also it would be a tactical decision." Given that defendant did not seek to introduce evidence of Son's involvement in a shooting, we see no ruling that we can review. Because it appears the trial court did not exclude evidence of the shooting, we will not examine the issue. (See *People v. Navarette* (2003) 30 Cal.4th 458, 497 [evidentiary issue forfeited unless raised in the trial court].)

B.     <u>CONSTITUTIONAL RIGHTS</u>

Defendant contends the exclusion of the foregoing evidence violated his constitutional rights to present a defense and to a fair trial. The People contend defendant forfeited the constitutional issue by failing to raise it in the trial court. Defendant asserts constitutional objections would have been futile given the trial court's exclusion of the evidence under Evidence Code section 352.

It is a " 'well-established procedural principle that, with certain exceptions, an appellate court will not consider claims of error that could have been—but were not— raised in the trial court.' " (*People v. Stowell* (2003) 31 Cal.4th 1107, 1114.) An exception to the forfeiture rule provides that an issue will not be forfeited if an objection would have been futile. (*People v. Abbaszadeh* (2003) 106 Cal.App.4th 642, 648.)

" 'As a general matter, the "[a]pplication of the ordinary rules of evidence . . . does not impermissibly infringe on a defendant's right to present a defense." [Citations.] Although completely excluding evidence of an accused's defense theoretically could rise to this level, excluding defense evidence on a minor or subsidiary point does not impair an accused's due process right to present a defense.' " (*People v. Boyette* (2002) 29 Cal.4th 381, 427-428.)

17

Defendant does not inform us why it would have been futile to present the trial court with a different legal theory. In particular, defendant fails to explain why, if he had informed the trial court that this was all the evidence he had to support his defense, the trial court would not have listened to such an argument. Defendant assumes that because the trial court ruled against him under Evidence Code section 352, then it would have ruled against him on a constitutional theory as well. Without more explanation as to why the trial court would be so unyielding, we find defendant's argument to be unpersuasive. We conclude defendant forfeited the issue by failing to raise it in the trial court.

Nevertheless, if defendant had not forfeited the issue, we would find no error. As explained *ante*, the excluded evidence had little probative value in relation to defendant being innocent of the charges. If defendant had used the excluded evidence to establish that Son was a gun-owning gang member who lived in the apartment, then that would not demonstrate defendant's innocence because two people can jointly possess a firearm. (See *People v. Nieto* (1966) 247 Cal.App.2d 364, 368 ["joint or constructive possession, custody or control of the guns"].) Defendant has not shown that the trial court excluded evidence of Son's exclusive possession of the firearms. As a result, the excluded evidence lacked probative value, which means it pertained to a minor or subsidiary point and did not implicate defendant's constitutional right to present a defense. Therefore, the trial court did not violate defendant's constitutional rights.

## C.  POSSESSION INSTRUCTION

### 1.  *PROCEDURAL HISTORY*

#### a.  Information

The charges against defendant concerned possession of the following:  in Count 1, a "Short Barrelled [*sic*] AR-15 (EP Armory)"; in Count 2, a "Short Barrelled [*sic*] AR-15 (Anderson Manc)"; in Count 3, a "12-Guage [*sic*] Shotgun"; in Count 4, a ".45 caliber handgun"; in Count 5, a ".380 caliber handgun"; in Count 6, a ".32 caliber handgun"; and in Count 7, "ammunition and reloaded ammunition."

#### b.  CALCRIM No. 2510

The trial court proposed to instruct the jury with CALCRIM No. 2510, which concerns possession of a firearm by a felon.  No objections were raised to the instruction.  The instruction provided:  "The defendant is charged in Counts 1 – 6 with unlawfully possessing a firearm in violation of Penal Code Section 29800(a)(1).  [¶]  To prove that the defendant is guilty of this crime, the People must prove that:

"1. The defendant possessed a firearm;

"2. The defendant knew that he possessed the firearm;

"AND

"3. The defendant had previously been convicted of a felony.

"A *firearm* is any device designed to be used as a weapon, from which a projectile is expelled or discharged through a barrel by the force of an explosion or other form of combustion.  [¶]  A firearm does not need to be in working order if it was designed to shoot and appears capable of shooting.

19

"Two or more people may possess something at the same time. [¶] A person does not have to actually hold or touch something to possess it. It is enough if the person has control over it or the right to control it, either personally or through another person.

"You may consider evidence, if any, that the defendant was previously convicted of a crime only in deciding whether the People have proved this element of the crime. [¶] Do not consider such evidence for any other purpose. [¶] The People allege that the defendant possessed the following firearms:

"Count 1: Short Barreled AR-15

"Count 2: Short Barreled AR-15

"Count 3[:] 12-Gauge Shotgun

"Count 4[:] .45 Caliber Handgun

"Count 5[:] .380 Caliber Handgun

"Count 6[:] .32 Caliber Handgun

"You may not find the defendant guilty unless all of you agree that the People have proved that the defendant possessed at least one of the firearms, and you all agree on which firearm he possessed."

c.     <u>Closing Argument</u>

During the prosecutor's closing argument, she said, "As to Counts 1 through 6, I have to prove that the defendant possessed a firearm, the defendant knew he possessed a firearm, and the defendant had previously been convicted of a felony."

20

During defense counsel's closing argument, he said, "Even if you believe that he had access to that home or that bedroom or he had control over its items, the District Attorney has not proven that he knew that he had control over those firearms." Defense counsel continued, "[O]nce again, the DA has to prove that he knew that he possessed those firearms."

### d.     Verdict Forms

The jury was given separate verdict forms for each count. Each verdict form listed the one weapon at issue in that count. For example, the Count One verdict form read: "We, the jury in the above-entitled action, find the defendant, TONY JOE BUCKNER, GUILTY of the crime of POSSESSION OF [A] FIREARM BY A FELON, to wit, Short Barreled AR-15 (EP Armory), in violation of Penal Code Section 29800(a)(1), as to Count 1 of the Information."

### 2.     *ANALYSIS*

### a.     Defendant's Contention

Defendant takes issue with the portion of the jury instruction that lists the counts and their associated firearms and then reads, "You may not find the defendant guilty unless all of you agree that the People have proved that the defendant possessed at least one of the firearms, and you all agree on which firearm he possessed." Defendant contends, "[T]he court modified the instruction for possession to literally tell the jury that it only need to unanimously agree once as to one firearm in order to convict appellant as to all of the firearms. Said instruction was plainly wrong." Defendant contends that permitting the jury to find him guilty of all six counts based upon the

21

finding that he possessed one firearm violated his constitutional rights because it permitted "the jury to convict without a proper finding that the element has been proved beyond a reasonable doubt."

### b.    Forfeiture

The People contend defendant forfeited this issue by failing to object to the jury instruction in the trial court. The People assert, "When a defendant fails to request a modification to a standard jury instruction, he forfeits any claim of error on appeal that the wording of the instruction is defective. [Citation.] In other words, when a proposed instruction correctly states the law but the defendant believes it is misleading or confusing under the specific facts of the case, he is obliged to offer corrections or clarifications of the instruction to avoid forfeiting the issue on appeal. [Citation.]"

" 'Generally, a party may not complain on appeal that an instruction correct in law and responsive to the evidence was too general or incomplete unless the party has requested appropriate clarifying or amplifying language.' " (*People v. Guiuan* (1998) 18 Cal.4th 558, 570.) However, defendant is not arguing that the instruction was either too general or incomplete; he is asserting the instruction is legally incorrect. Specifically, defendant is contending the trial court erred by instructing the jury that if it found defendant possessed one firearm then it could find defendant guilty of possessing all six firearms. Because defendant is asserting the instruction misstated the law and

violated his constitutional rights, the issue has not been forfeited.  (*People v. Smithey* (1999) 20 Cal.4th 936, 976, fn. 7.)[3]

### c.      Standard of Review

We apply the de novo standard of review.  (*People v. Cole* (2004) 33 Cal.4th 1158, 1210.)  Our first task is ascertaining the relevant law.  Second, we determine the meaning of the instruction and whether there is a reasonable likelihood the jury understood the instruction in the manner presented by defendant.  Third, " 'we determine whether the instruction, so understood, states the applicable law correctly.' " (*People v. Kelly* (1992) 1 Cal.4th 495, 525-526.)

### d.      Analysis

The applicable law is "that before a jury may convict a defendant of a criminal offense, it must find that the prosecution has proved all elements of the offense beyond a reasonable doubt."  (*People v. Aranda* (2012) 55 Cal.4th 342, 349.)

The form jury instruction reads, "[The People allege that the defendant (owned/purchased/received/possessed) the following firearms:  *<insert description of each firearm when multiple firearms alleged>*.  You may not find the defendant guilty unless all of you agree that the People have proved that the defendant (owned/purchased/received/possessed) at least one of the firearms, and you all agree on

---

[3] Defendant contends that if his trial counsel forfeited the issue of instructional error, then his trial counsel rendered ineffective assistance.  We have concluded the issue was not forfeited.  Therefore, we do not examine the alternative issue of ineffective assistance of counsel.

23

which firearm (he/she) (owned/purchased/received/possessed).]" (CALCRIM No. 2510.)

The Bench Notes for CALCRIM No. 2510 provide, "If the prosecution alleges under a single count that the defendant possessed multiple firearms and the possession was 'fragmented as to time . . . [or] space,' the court has a sua sponte duty to instruct on unanimity. (*People v. Wolfe* (2003) 114 Cal.App.4th 177, 184-185.) Give the bracketed paragraph beginning 'The People allege that the defendant possessed the following firearms,' inserting the items alleged."

The instruction given by the trial court in the instant case provided in part: "The People allege that the defendant possessed the following firearms:

"Count 1: Short Barreled AR-15

"Count 2: Short Barreled AR-15

"Count 3[:] 12-Gauge Shotgun

"Count 4[:] .45 Caliber Handgun

"Count 5[:] .380 Caliber Handgun

"Count 6[:] .32 Caliber Handgun

"You may not find the defendant guilty unless all of you agree that the People have proved that the defendant possessed at least one of the firearms, and you all agree on which firearm he possessed."

The trial court used an optional part of the jury instruction that it should not have used in this case. The trial court used a portion of the instruction that is meant to be used when multiple firearms are alleged in a single count. That is not the situation

24

presented in this case. In this case, each count concerns a single firearm. Therefore, the jury did not need a unanimity instruction because there were not multiple weapons allegations within a single count.

By giving the unanimity portion of the instruction, which provides defendant could be found guilty if he possessed "at least one of the firearms," while also giving the jury a list of six counts that each list one firearm, the trial court implied that if the jury found defendant possessed one firearm, then it could find him guilty of all six firearm counts.

We pondered if one might understand the phrase "find the defendant guilty" as referring to a single count, such that the jury would understand the instruction as requiring proof of one firearm per count. However, that interpretation fails due to the phrase "at least one of the firearms." The phrase "at least one of the firearms," by its plain terms directs the jury to consider the firearm counts as a group. It indicates that if the jury finds defendant possessed "at least one of the firearms" then it can "find the defendant guilty" and refers to "Counts 1 – 6," which implies defendant could be found guilty of all six counts.

That interpretation of the instruction was enforced by the prosecutor who used "firearm" in its singular form despite grouping together Counts 1 through 6. For example, during closing argument, the prosecutor asserted, "As to Counts 1 through 6, I have to prove that the defendant possessed a firearm, the defendant knew he possessed a firearm, and the defendant had previously been convicted of a felony." The prosecutor's argument, like the jury instruction, can be understood as requiring proof of

25

possession of one firearm for "Counts 1 through 6," as opposed to proof of possession of a different firearm for each count.

The People assert the jury would have understood the instruction as requiring proof of six firearms for the six counts because "CALCRIM No. 2510 correctly defines the elements of the crime." The jury instruction, as given to the jury, defined the elements as follows: "The defendant is charged in Counts 1-6 with unlawfully possessing a firearm in violation of Penal Code Section 29800(a)(1). [¶] To prove that the defendant is guilty of this crime, the People must prove that:

"1. The defendant possessed a firearm;

"2. The defendant knew that he possessed the firearm;

"AND

"3. The defendant had previously been convicted of a felony."

This portion of the instruction is closer to the correct law because it refers to "crime" and "firearm" in the singular, i.e., one firearm per count. One could read the sentence as providing that for each crime/count it needs to be shown that defendant possessed one firearm.

The People further assert that the listing of each firearm with its corresponding count, within the instruction, was helpful because it indicated to the jury "for example, that in order to find [defendant] guilty of count one, it had to find he possessed the short barreled AR-15." This portion of the People's argument is not persuasive. The list of firearms and their corresponding counts, combined with the instruction that defendant could be found guilty if he "possessed at least one of the firearms," gives the impression

26

that defendant could be found guilty of all six counts if he possessed one of the firearms on the list.

In sum, it is possible, that if jury focused only on the first segment of CALCRIM No. 2510, then it may have understood that evidence of one firearm per count was required to find defendant guilty. However, if the jury focused on the last segment of CALCRIM No. 2510, then it may have understood that evidence of one firearm could be used to convict defendant of all six firearm counts. Given that the last segment of the instruction was, by its plain language, incorrect in the law, and that the prosecutor reinforced that incorrect legal statement during closing argument, we conclude there is a reasonable likelihood the jury misapplied the law. (*People v. Wallace* (2008) 44 Cal.4th 1032, 1075 [reasonable likelihood the jury "misapplied the instruction"].)

The trial court erred by instructing the jury that, if it found defendant possessed one firearm, then it could find defendant guilty of possessing six firearms. The trial court's error denied defendant his right to have the jury find every element of the charged offenses. That instructional error "is serious constitutional error that impacts a defendant's fundamental right to a jury trial." (*People v. Merritt* (2017) 2 Cal.5th 819, 821.) The failure to properly instruct on an element of an " 'offense is amenable to harmless error analysis.' " (*Id.* at p. 827.) We examine "whether it is clear beyond a reasonable doubt that a rational jury would have rendered the same verdict absent the error." (*Id.* at p. 831.)

The jury found defendant guilty of possessing ammunition that was located in the bedroom. Because the jury found defendant possessed the ammunition, we know the

jury rejected defendant's theory that it was Conservator's bedroom, and the jury accepted the prosecutor's theory that the bedroom belonged to defendant. Based upon the flawed instruction, the jury also found that defendant possessed at least one firearm. Thus, the jury found that defendant had dominion and control over the bedroom, per the ammunition verdict, and that defendant owned at least one firearm.

Switching to the evidence pertaining to the five firearms in the bedroom, defendant said to Son, " 'And lock my door,' something along those lines to lock my door." The only locked door in the apartment was the door to the bedroom in which the firearms were located. The jury found that the bedroom belonged to defendant as demonstrated by the ammunition verdict. The jury's finding was supported by (1) mail inside the bedroom that was addressed to defendant; (2) prescription medication inside the bedroom that bore defendant's name; and (3) the clothes in the bedroom closet that matched defendant's size. The foregoing is strong circumstantial evidence supporting the jury's finding that the bedroom belonged to defendant. (See, e.g., *People v. Rushing* (1989) 209 Cal.App.3d 618, 620-622 [documents bearing the defendant's name and signature in a bedroom are circumstantial evidence of dominion and control over the premises].)

Further, for some of the 15 minutes when Son was barricaded in the apartment, he could be seen through a window; the window was not in the master bedroom. Also, the guns in the closet were behind neatly stacked boxes, bottles of cologne, and dusty but "very organized" clothes. Given that objects in the closet were dusty, neat, and well organized, and Son was not in the master bedroom for at least some of the 15-minute

28

standoff, the evidence reflects that Son did not place the firearms in the closet while barricaded in the apartment.

In sum, given (1) the jury found that the ammunition in the bedroom belonged to defendant; (2) the jury found that defendant possessed at least one firearm; and (3) the variety of evidence, e.g., mail, medicine, and clothes, indicating the bedroom belonged to defendant, we conclude beyond a reasonable doubt that, absent the error, a rational jury would have rendered the same verdicts concerning the firearms in the apartment.

The firearm that comprised the charge in Count 5 was the gun that was found in defendant's vehicle. Defendant was stopped while driving the vehicle in which the Count 5 gun was found. Also, the vehicle was registered to defendant. The foregoing evidence is strong evidence indicating that defendant had dominion and control over the firearm in the vehicle. Additionally, the jury found that defendant possessed ammunition and at least one firearm, which indicates the jury rejected defendant's theory of the case. Given the strong evidence and the jury's rejection of defendant's theory, we conclude beyond a reasonable doubt that, absent the error, a rational jury would have rendered the same verdict concerning the firearm in the vehicle.

Defendant contends the error is structural and requires reversal per se. Our Supreme Court has held that the failure to instruct on an element of an offense is amenable to a harmless error analysis. (*People v. Merritt*, *supra*, 2 Cal.5th at p. 827.) Accordingly, we are not persuaded that the error is reversible per se. (See *Auto Equity Sales, Inc. v. Superior Court of Santa Clara County* (1962) 57 Cal.2d 450, 456 [inferior courts must follow the decisions of higher courts].)

29

In the alternative, defendant contends the trial court's error was prejudicial because defendant "presented strong evidence to support his defense that he did not live in the home." The jury found defendant possessed the ammunition located in the bedroom, which reflects the jury rejected defendant's theory that he did not live in the apartment. Because the jury rejected defendant's defense, we find his argument about the strength of his case to be unpersuasive.

Defendant contends the evidence of defendant possessing the firearm in the vehicle was contradicted in that there were multiple passengers in the car when defendant was seen driving it and defendant shared the vehicle with Conservator. Defendant also presumes that Son had access to the vehicle. The evidence that other people may have shared the space with defendant does not mean that defendant did not also possess the firearm. Defendant was physically in the vehicle with the firearm and had legal ownership over that vehicle. Further, the jury found defendant possessed at least one firearm because the instruction informed it that, to find defendant guilty, it needed to find "defendant possessed at least one of the firearms." Given the strength of the evidence indicating that defendant had control over the firearm in the vehicle, and the jury's finding that defendant possessed at least one firearm, we are not persuaded by defendant's argument.

D.     UNANIMITY INSTRUCTION

Defendant contends the trial court erred by not instructing the jury on unanimity when "[t]he prosecution attempted to show [defendant] possessed six different guns in

30

various places." Defendant contends "the jury may have convicted [him] without reaching a unanimous verdict as to which guns [he] possessed."

"A unanimity instruction is required if there is evidence that more than one crime occurred, each of which could provide the basis for conviction under a single count." (*People v. Grimes* (2016) 1 Cal.5th 698, 727.)

In the instant case, the jury was repeatedly informed that there was only one firearm alleged per count. The jury instruction on the firearm possession charges listed one firearm per count, the verdict forms listed one firearm per count, and the prosecutor's closing argument listed one firearm per count. The jury was not presented with possession of multiple firearms alleged in a single count.

Even with the erroneous unanimity instruction that was given within the possession instruction (CALCRIM No. 2510), the jury was not told that multiple firearms were alleged within a single count. When the instruction informed the jury that defendant could be found guilty if "the People have proved that defendant possessed at least one of the firearms," it went on to read, "and you all agree on which firearm he possessed." In sum, the jury was repeatedly informed that there was one firearm alleged per count and the jury was informed that it needed to agree on the firearm that defendant possessed. Therefore, we are not persuaded that the trial court erred.

E.    CUMULATIVE ERROR

Defendant contends that when the trial court's errors are added together their cumulative prejudicial effect requires reversal of the judgment. We have found one error and concluded that it was harmless. Because there was a single error, we do not

31

have multiple errors to cumulate.  (*People v. Duff* (2014) 58 Cal.4th 527, 562 ["nothing to cumulate"].)  Accordingly, we go no further with the cumulative error contention.

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER
Acting P. J.

We concur:

FIELDS
J.

RAPHAEL
J.